OPINION OF THE COURT
Michael Gerstein, J.
*346 Defendant was initially charged in a desk appearance ticket dated November 29, 2009 with criminal trespass in the second degree (Penal Law § 140.15). In a superseding information dated December 21, 2009, defendant was charged with criminal trespass in the second degree (Penal Law § 140.15) and criminal trespass in the third degree (Penal Law § 140.10 [e]). Defendant seeks an order:
(1) Dismissing count one of the information as facially insufficient pursuant to CPL 100.40 and 170.30;
(2) Suppressing any and all testimony regarding any noticed statements allegedly made by defendant, and any other tangible or testimonial fruits of the illegal seizure and search of defendant, or, in the alternative, directing the holding of a Huntley/ Dunaway hearing, pursuant to CPL 710.20 (3) and 710.60;
(3) Precluding the People from introducing evidence of any statement or identification testimony at trial for which proper notice has not been given pursuant to CPL 710.30 (3);
(4) Precluding at trial the use of defendant’s prior criminal history or prior uncharged criminal, vicious or immoral conduct;
(5) Reserving to defendant the right to make additional motions as necessary; and
(6) For such other relief as this court may deem just and proper.
The People filed a response and voluntary disclosure form (VDF) dated March 8, 2010, which also included a demand for notice of alibi pursuant to CPL 250.20. In their response, the People maintain that the original instrument was sufficient.
The Complaint is Facially Insufficient
In order to be sufficient on its face, an information must allege facts sufficient to provide reasonable cause to believe that the defendant committed the offense charged. (CPL 100.40 [4] [b]; People v Dumas, 68 NY2d 729 [1986].) The allegations must be nonhearsay. {People v Alejandro, 70 NY2d 133 [1987]; CPL 100.40 [1] [c].)
Penal Law § 140.15, criminal trespass in the second degree, requires that a person “knowingly enters or remains unlawfully in a dwelling.” Penal Law § 140.10 (e) requires that a person “knowingly enters or remains unlawfully in a building or upon real property . . . where the building is used as a public housing project in violation of conspicuously posted rules or regulations governing entry and use thereof.” In order to support ei *347 ther of these charges, the People must provide sufficient nonhearsay allegations supporting that defendant was knowingly present where he was not welcome. (People v Outlar, 177 Misc 2d 620 [Crim Ct, NY County 1998] [information failed to allege facts from which the court can infer that defendant’s unlawful presence was communicated to him or that he otherwise knew his presence was unlawful].)
The information alleges that the incident occurred on or about November 29, 2009, at approximately 11:35 a.m., inside of 868 Amsterdam Avenue in the County and State of New York. The accusatory instrument states, in relevant part:
“The Deponent states that while on patrol inside the above location, an apartment building where people reside, deponent observed the defendant inside the lobby of the dwelling beyond the vestibule and that said location is beyond a posted sign which read, ‘No Trespassing,’ ‘Tenants and their Guests Only’ and ‘Anyone who remains unlawfully upon these premises will be prosecuted.’
“Deponent further states that defendant is not a tenant in that defendant provided an address different from the above location and defendant is not an invited guest in that defendant was unable to provide the identity of a resident of whom defendant was an invited guest.
“Deponent determined the defendant did not have permission or authority to be inside the dwelling based on information and belief the source of which is as follows: Deponent observed the defendant trespass inside a Housing Authority Building. Deponent is a member of the New York Police Department and as such is an agent of this dwelling and defendant did not have permission or authority to enter or remain in the area in which he was found.”
Defendant contends that the accusatory instrument fails to establish that defendant unlawfully entered the premises because the area in question is presumptively open to the public, and defendant was not instructed by a person with authority not to enter the premises. Moreover, defendant contends, the charge of criminal trespass in the second degree is improper because the premises are a New York City Housing Authority (NYCHA) building.
With respect to the first argument, defendant contends that a person who “enters or remains in or upon premises which are *348 at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person.” (Defendant’s mem at 4 [emphasis added], citing Penal Law § 140.00 [5].) Thus, defendant argues, when a person enters a property that is open to the public, “the People have the burden of proving that a lawful order excluding the defendant from the premises issued, that the. order was communicated to the defendant by a person with authority to make the order, and that the defendant defied that order.” (People v Leonard, 62 NY2d 404, 408 [1984].)
Defendant maintains there is binding appellate authority for the proposition that although an apartment building is a dwelling, various common areas within an apartment building are presumptively open to the public, including lobbies, hallways, stairways, and basements, citing, inter alia, People v Sanchez (209 AD2d 265 [1st Dept 1994] [holding that an unlocked vestibule was not closed to the public]) and People v Maisonet (304 AD2d 674 [2d Dept 2003] [holding that the hallway of an apartment building was presumptively open to the public]).
Defendant further argues, citing Outlar (177 Misc 2d at 623-624), that in the absence of specific allegations about the layout of the building, the mere claim that a defendant was in a lobby, hallway, stairway, or other presumptively public portion of a building is insufficient to support an unlawful entry charge. Defendant further argues that here there are no allegations that defendant passed through a locked door, a buzzer and intercom system, or “any other physical separation or barrier that would suggest the [area next to the elevators] was closed to the public.”
Defendant argues that the allegations here are similar to that in People v Spont (Crim Ct, NY County, Apr. 12, 2005, Simpson, J., docket No. 2005NY004503), which the court found insufficient. The complaint there alleged that defendant was inside the lobby of an apartment building where people reside, beyond the vestibule, and that said location is beyond a posted sign which read, in part: “Anyone who remains unlawfully [u]pon these premises will be prosecuted.” (Id., slip op at 2-3.) The court in Spont noted that the complaint was devoid of allegations that the “no trespass” sign “was posted in a conspicuous manner or that the defendant saw the sign or was asked whether he was aware of the sign.” (Id., slip op at 4.) De *349 fendant argues that there is no meaningful distinction from the facts in Spont and those in our case.*
Next, defendant argues that the charge of trespass in the second degree is improper because the premises are a Housing Authority building. Defense counsel cites People v Brown (Crim Ct, NY County, 2006, Gesmer, J., docket No. 2006NY00378), People v Gonzalez (NYLJ, Apr. 4, 2001, at 21, col 3 [Crim Ct NY County]) and People v Carter (169 Misc 2d 230 [Crim Ct, Kings County 1996]) in support of the proposition that public housing buildings, although dwellings, are beyond the purview of Penal Law § 140.15, and defendant should rather be charged under Penal Law § 140.10 (e) or (f). Defense counsel further argues courts have recognized that the two subdivisions of trespass in the third degree (Penal Law § 140.10 [e], [f]) were added by the Legislature “in an attempt to curtail the growing number of nonresidents who enter the lobbies of public housing apartment buildings and threaten the safety and security of the residents therein.” (Carter at 234.)
The subdivision on public housing, Penal Law § 140.10 (e), was added in 1992. In promulgating the law, the Legislature explained that current trespass laws were inapplicable “since these buildings were ‘public property’ and hence, beyond the purview of criminal behavior.” (169 Misc 2d at 234, quoting Legislative Mem in Support, Bill Jacket, L 1992, ch 434, at 8.) The sponsor stated: “Under current law, residents of public housing projects have no protection against would be trespassers. The laws involving trespass to privately owned residential buildings should apply as well to public housing projects.” (Bill Jacket, L 1992, ch 434, at 10.) This section operates in all public housing developments where “no trespassing” signs are clearly displayed, and affords the residents the same protection as in private apartment buildings; thus, simply being in the lobby of a housing project can result in a violation of the statute. (Carter, supra.) However, the charge may not be sustained absent any evidence of conspicuously posted “no trespassing” signs or that the defendant had any actual knowledge that his or her presence was prohibited. (Matter of Gregory W., 26 AD3d 221 [1st *350 Dept 2006] [no evidence showing that juvenile had entered public housing building through entrance at which signs were posted]; Matter of James C., 23 AD3d 262 [1st Dept 2005] [no evidence that “no trespassing” signs in public housing project lobby where juvenile was found had been conspicuously posted or that such signs constituted rules or regulations governing entry and use of lobby]; People v Mackey, 16 Misc 3d 398 [Crim Ct, Kings County 2007] [absent any evidence of conspicuously posted “no trespassing” signs or that defendant had any actual knowledge that his presence was prohibited, the essential element of knowledge that one’s presence in public housing development was unlawful could not be imputed to defendant].)
Given that the Legislature enacted a law which specifically addresses trespassing in Housing Authority buildings, we hold that the defendant here should not have been charged with Penal Law § 140.15, and may only be properly charged with Penal Law § 140.10 (e). Had the Legislature perceived that trespassing on NYCHA property could properly be charged under Penal Law § 140.15, a class A misdemeanor punishable by up to one year in jail, there would seem to have been little purpose to enact Penal Law § 140.10 (e), specifically addressed to NYCHA property, a class B misdemeanor, punishable by up to 90 days in jail. Rather, the legislative history of Penal Law § 140.10 (e) makes clear that the Legislature did not perceive Penal Law § 140.15 to encompass trespassing in NYCHA property, and believed that a new statute was needed to criminalize that act. And, while cases subsequent to the enactment of Penal Law § 140.10 (e) may have continued to charge Penal Law § 140.15 for trespassing on NYCHA property, neither habit nor common practice is legally sufficient to overcome the clear legislative history behind the enactment of Penal Law § 140.10 (e).
Moreover, for there to be a trespass, there must be some basis to believe that an area that appears open to the public is not in fact so open. (People v Rodriguez, 159 AD2d 201, 202-203 [1st Dept 1990], lv denied 76 NY2d 742 [1990].) The mere posting of a “no trespassing” sign is not enough to establish that the lobby of the premises is not open to the public, where “the information does not indicate that the signs are posted strategically or conspicuously enough to afford adequate notice of the prohibited conduct.” (Outlar at 625; accord People v Payton, NYLJ, Feb. 25, 1998, at 30, col 2 [Crim Ct, NY County Billings, J.]; but see People v Scott, 8 Misc 3d 428 [Crim Ct, NY County *351 2005] [the allegation that defendant passed beyond a vestibule into the lobby of a NYCHA building held sufficient to establish violation of Penal Law § 140.15].)
It is the prosecutor’s burden to prove defendant’s trespass, and not defendant’s burden to establish that his presence in a building was legitimate. (Matter of Daniel B., 2 AD3d 440 [2d Dept 2003]; see also People v Spann, 8 Misc 3d 654, 656 [Crim Ct, NY County 2005] [where defendants were found exiting an apartment, the court was unwilling to infer that defendants were there unlawfully “simply because the defendants did not reside in the building and could not give the full name of the person in that apartment they were there to visit”]; People v Ruiz, 15 Misc 3d 1135[A], 2007 NY Slip Op 50989[U] [Sup Ct, Bronx County 2007] [accusatory instrument alleging defendant was in the lobby of a locked apartment building with a “no trespassing” sign, and indicated he did not reside there but gave no explanation for his presence in the building, dismissed].)
The complaint here simply alleges that defendant was inside the lobby of the NYCHA building, beyond the vestibule and beyond a posted “No Trespassing” sign. Because the information fails to establish that there were conspicuously posted “no trespassing” signs or that the defendant had any actual knowledge that his or her presence was prohibited, we hold the complaint insufficient in failing to allege facts from which one could infer defendant was knowingly unwelcome. (Matter of Gregory W., supra-, Matter of James C., supra-, People v Mackey, 16 Mise 3d 398 [Crim Ct, Kings County 2007]; Outlar, supra.)
While the remainder of the motion could be denied as moot in light of our finding of facial insufficiency, the People may attempt to supersede as to Penal Law § 140.10. Hence, in the interests of judicial economy, we proceed to the other prongs of defendant’s motion.
Motion to Suppress Statements
Defendant moves to suppress all properly noticed statements that he allegedly made on the grounds that such statements were obtained in violation of his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and article I, § 6 of the New York State Constitution, and were thus involuntary within the meaning of CPL 60.45. (See People v Huntley, 15 NY2d 72 [1965]; Dunaway v New York, 442 US *352 200 [1979].) Defendant further argues that any and all tangible or testimonial fruits of his illegal seizure and search should be suppressed. In the alternative, defendant requests a hearing on the issues raised.
The People counter that they intend to offer in their direct case at trial statements that defendant made to a law enforcement officer, submit that defendant’s statements were lawfully obtained and deny all allegations to the contrary.
Our review of the case file reveals that statement notice was given by the People at arraignment pursuant to CPL 710.30 (1) (a), and the VDF contains an oral statement allegedly made by defendant to a public servant on November 29, 2009. Defendant’s request for a Huntley/Dunaway hearing is granted.
Preclusion of Undisclosed Statements and Identification Testimony
Defendant moves for an order precluding statements allegedly made by defendant which have not been noticed, as well as any identification testimony which has not been noticed to defendant, pursuant to CPL 710.30. Since there is no indication that the People intend to introduce any statement or identification evidence, this branch of defendant’s motion is denied with leave granted to resubmit should the People seek to introduce any such evidence at trial.
Defendant’s Request for a Sandoval Hearing
The branch of defendant’s motion seeking a Sandoval hearing and notice from the People of specific instances of prior uncharged criminal, vicious or immoral conduct is granted to the extent that defendant has leave to resubmit this portion of the motion to the trial judge.
Cross Motion for Reciprocal Discovery
The People’s cross motion for reciprocal discovery is granted.
Reservation of Rights
The branch of defendant’s motion seeking the right to make further motions is granted to the extent provided for by CPL 255.20 (3).

 Defendant also cites, inter alia, People v Felix (Crim Ct, NY County, decision and order dated Mar. 24, 1999, Feinman, J., docket No. 98N118370), holding the allegation that defendant was “inside the lobby of the dwelling” was insufficient, because there was no indication that the “no trespassing” signs posted in the lobby were sufficiently conspicuous so as to have satisfied the “personal communication” requirement.